UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZIONESS MOVEMENT, INC., | Civil Case No. |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| THE LAWFARE PROJECT, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff, Zioness Movement, Inc. ("Plaintiff" or "ZMI"), by its undersigned counsel, as and for its complaint against defendant The Lawfare Project, Inc. ("LPI" or "Defendant") respectfully alleges on the basis of knowledge with respect to itself and its actions and on the basis of information and belief as to all other matters, as follows:

## <u>NATURE OF THE ACTION</u>

1.      This is an action for declaratory judgment and trademark infringement.

2.      ZMI is the rightful owner of the mark bearing registration no. 6048225 ("the '225 mark"), registered with the United States Patent and Trademark Office ("USPTO") as of May 5, 2020.

3.      LPI has asserted ownership of the '225 mark. *See* https://www.thelawfareproject.org/partners-projects.

4.     On August 10, 2020, LPI filed an unfounded petition to cancel ZMI's ownership of the '225 mark with the United States Trademark Trial and Appeal Board (the "TTAB").

5.     Upon information and belief, the LPI Board of Directors did not have knowledge of the petition to cancel prior to the filing of the petition.

6.     Upon information and belief, Brooke Goldstein ("Ms. Goldstein") has assumed full control over LPI to pursue a personal vendetta against the founder of ZMI by wrongfully using the legal process as a weapon against ZMI and its founder.

## THE PARTIES

7.     Plaintiff ZMI is a nonprofit corporation organized and existing under the laws of the State of New York, with a principal place of business at 244 Fifth Avenue, Suite A205, New York NY 10001.

8.     Upon information and belief, defendant The Lawfare Project, Inc. is a nonprofit corporation organized and existing under the laws of the District of Columbia, registered to do business in the State of New York, with a principal place of business at 633 Third Avenue, 21st Floor, New York, NY 10017. Upon information and belief, Brooke Goldstein, a resident of the State of New York, is the founder and executive director of defendant The Lawfare Project, Inc.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338 because this action arises under the laws of the United States, the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, and the

Lanham Act, 15 U.S.C. §§ 1114 and 1125, *et seq.* This Court has supplemental jurisdiction pursuant to 28 U.S.C.§ 1367(a) for all other claims asserted in this Complaint because those claims are so closely related to the federal claims asserted herein as to form part of the same case and controversy.

10.     This Court has personal jurisdiction over defendant The Lawfare Project, Inc. because it is registered to do business in the State of New York and it has its principal place of business in the State of New York.

11.     Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District and because Defendant is subject to personal jurisdiction in this Judicial District.

12.     An actual case or controversy exists between the parties as evidenced by the facts and circumstances described herein.

## FACTUAL ALLEGATIONS

*The Idea for an Organization Marrying Zionism*
*With Progressive Values and the Birth of ZMI*

13.     Amanda Berman ("Ms. Berman") saw an absence of Jewish organizations creating a place for people to be both progressive and pro-Israel or Zionist.

14.     In particular, the absence of a voice for progressives who are Zionist came to a head in the summer of 2017, when in June three Jewish participants were removed from the Chicago Dyke March (a pro-LGBTQ demonstration) because they were carrying LGBTQ Pride flags adorned with the Star of David.

15.     In response, Ms. Berman organized a group of Jewish progressives to attend Chicago's SlutWalk (a feminist demonstration against rape culture and victim shaming) in August 2017. *See* https://www.haaretz.com/us-news/zionist-group-to-march-in-chicago-slutwalk-to-empower-jewish-activists-1.5442150. Ms. Goldstein participated in this group.

16.     Ms. Berman and Ms. Goldstein were friends as well as colleagues at the time that Ms. Berman began working on building the Zioness movement.

17.     Just prior to attending the SlutWalk, Ms. Berman began using the mark ZIONESS in connection with what she referred to as the "Zioness movement" or Zioness initiative.

18.     Ms. Goldstein supported Ms. Berman's efforts and joined her at the Chicago SlutWalk, as a fellow female Zionist, not as a representative of LPI.

19.     Ms. Berman's Zioness movement quickly gained significant press and attention in Jewish and progressive circles.

20.     Ms. Goldstein at all times made it clear that the mission of LPI was distinct from that of Ms. Berman's Zioness movement and that it was important to keep the two groups as separate entities.

21.     On October 5, 2017, an article was published by a current ZMI board member and then-friend of Ms. Goldstein, Chloé Valdary, that stated explicitly: "To correct the record regarding Brooke Goldstein's involvement in Zioness: Goldstein is just one of thousands of supporters of Zioness. She's a friend and colleague of co-

founder Amanda Berman at the Lawfare Project, which is a non-profit law firm and civil rights organization."

22.     Ms. Goldstein was aware of this article and did not contest it at any point.

23.     In another article on October 5, 2017, Ms. Berman was referred to as "the group's [Zioness Movement] leader and spokesperson." The article also reported "that there is no connection between Lawfare and the Zioness Movement, and that while Goldstein has attended Zioness events, she is not a founder or spokesperson for Zioness."

24.     Ms. Goldstein was aware of this article and did not contest it at any point.

25.     The entire Zioness organization was built by Ms. Berman, around Ms. Berman's strategic vision and action.

26.     In the fall of 2017, Ms. Berman began to build a board of directors for the new organization.

27.     Ms. Berman registered ZMI as a New York entity in 2018 and transferred the ZIONESS mark to ZMI.

28.     ZMI is a coalition of progressive and Zionist Jewish activists and allies who fight for the advancement of social, racial, economic, environmental, and gender justice in the United States and for the inclusion of Zionists in social justice spaces. ZMI has more than a dozen chapters across the United States.

*Ms. Berman's Prior Employment by LPI*

29.     On or about March 18, 2015, Ms. Berman was hired as an employee of LPI pursuant to a written Employment Agreement between Ms. Berman and LPI. The Employment Agreement explicitly provided to Ms. Berman the right to pursue independent projects without notice to or prior consent of LPI.

30.     Specifically, the Employment Agreement states in relevant part as follows: "Taking on other work. Employee is at liberty to take on other work while carrying out her Lawfare Project responsibilities, so long as none of these other activities contradict nor embarrass The Lawfare Project, nor reduce availability and production as required by this contract."

31.     LPI is a nonprofit legal organization focused on identifying opportunities to combat "lawfare," which Ms. Goldstein defines as "the abuse of the law as a weapon of war against Israel, the Jews, and the West," through legal action.

32.     While employed by LPI, Ms. Berman represented individual clients, through LPI, in legal actions across the country.

33.     Ms. Goldstein was aware in 2017 that Ms. Berman was building a fully independent Zioness Movement organization.

34.     Ms. Goldstein approved of the articles described above in paragraphs 21 and 23 about Ms. Berman's leadership of the new Zioness movement and the lack of role of either Ms. Goldstein or LPI in that movement.

35.     Ms. Goldstein celebrated Ms. Berman's leadership of the new Zioness movement many times, including purchasing an advertisement in a gala dinner journal honoring Ms. Berman for her work, *inter alia*, building Zioness.

36.     Ms. Goldstein congratulated Ms. Berman when Ms. Berman gave notice that she would be leaving LPI to work exclusively on Zioness.

37.     Ms. Goldstein took Ms. Berman and another colleague out to dinner to celebrate Ms. Berman's leadership of the new Zioness organization.

38.     Neither Ms. Goldstein nor anyone else associated with LPI expressed that ZMI or the ZIONESS mark belonged to or was associated with LPI, until about five months after Ms. Berman left her job at LPI.

*ZMI's ZIONESS Trademark*

39.     Ms. Berman sought to protect the Zioness mark for the benefit of ZMI. On April 11, 2018, ZMI applied to register the Zioness trademark with the USPTO.

40.     The Zioness trademark was published for opposition on March 26, 2019.

41.     LPI did not submit any opposition to ZMI's application to register the Zioness trademark.

42.     ZMI is the owner of the ZIONESS trademark, registration no. 6048225, registered on May 5, 2020, in class IC 016 (goods and services: posters), IC 035 (goods and services: public advocacy and public policy advocacy in the field of social justice, civil and human rights, and religious freedom and tolerance), and IC 041 (goods and services: educational services, namely, conducting

programs in the field of issues affecting Israel, Judaism, progressivism, social
justice, civil and human rights, and feminism) (the "U.S. Trademark Registration").
A copy of the U.S. Trademark Registration is attached hereto as **Exhibit A**.

43.    In October 2018, after ZMI had applied for the ZIONESS mark but
before the USPTO had registered the mark, Ms. Goldstein acknowledged in writing
that Ms. Berman and/or ZMI owned the ZIONESS mark.



*Neither LPI Nor Ms. Goldstein Had Any Role in ZMI*

44.    ZMI was formed as an independent New York non-profit corporation.

45.    ZMI was not, and is not, a subsidiary of LPI.

46.    Ms. Goldstein played absolutely no role in the formation of ZMI, did
not serve as a member of the founding Board of Directors (or any later formulation
of the Board of Directors), and did not appear on any documentation anywhere, at
any time, relating to the formal creation of ZMI.

47.    Ms. Goldstein was not involved in the drafting, review or approval of the bylaws, articles of incorporation, or any other paperwork relating to ZMI's incorporation.

48.    Similarly, Ms. Goldstein played no role in the creation of the mission statement, vision statement, strategic plan or guiding principles of ZMI.

49.    In February 2018, as soon as ZMI was incorporated in the state of New York, Ms. Berman opened a ZMI bank account at JPMorgan Chase. Ms. Berman's name was the only one on the account, and she was the only signer on the account until August 31, 2021, when ZMI Treasurer Sara Liss was added as a signer.

50.    LPI was aware that ZMI had set up an independent bank account. Ms. Goldstein never asked to see the ZMI bank statements, let alone demand oversight or access. LPI never asserted control over ZMI's bank account.

51.    Ms. Goldstein, and via her, LPI, was aware that Ms. Berman was actively fundraising for ZMI and that funds raised in these efforts were deposited into ZMI's independent bank account, which was not accessible by LPI.

52.    Neither Ms. Goldstein nor anyone else at LPI ever suggested that the funds raised for ZMI should be deposited into an LPI account or any other account over which Ms. Goldstein had even a modicum of control.

### Ms. Berman Leaves LPI to Run ZMI Full-Time

53.    Ms. Berman's employment with LPI terminated on or about December 31, 2018.

54.    Ms. Berman left LPI to run ZMI on a full-time basis.

55.     In or around May 2019, LPI and Ms. Goldstein began a campaign of harassment against Ms. Berman and ZMI.

56.     The first volley was a lawyer's cease and desist letter sent to Ms. Berman personally demanding the return of LPI's "intellectual property" with no suggestion that LPI would later claim ownership of the ZIONESS mark.

*LPI Has Never Owned the ZIONESS Mark*

57.     Ms. Goldstein, the Executive Director and founder of LPI, has admitted in writing that Ms. Berman was the rightful owner of the ZIONESS Mark.

58.     LPI did not own the mark and therefore did not provide ZMI with a verbal license to use the ZIONESS mark and never had any control over the ZIONESS mark.

59.     LPI and Ms. Goldstein were aware that ZMI was filing a trademark application for the ZIONESS mark in the name of ZMI at the time it was filed.

60.     LPI did not oppose (formally or informally) ZMI's trademark application.

61.     LPI's failure to file an opposition to ZMI's use of the ZIONESS trademark was an implicit representation that it would not assert a right or claim to the ZIONESS trademark.

62.     LPI did not take any steps to oppose ZMI's use of the ZIONESS mark until well after ZMI had established its use, applied for federal protection, and obtained federal protection.

63.     LPI did not file its Petition for Cancellation until August 10, 2020,

months after the USPTO registered the mark.

*Ms. Goldstein's Harassment of ZMI and Ms. Berman*

64.     For obscure reasons, Ms. Goldstein has undertaken a campaign of

harassment against Ms. Berman and ZMI.

65.     In June 2019, Ms. Goldstein wrote a letter intended to intimidate

Ms. Berman and force changes to the ZMI website. Upon information and belief,

Ms. Goldstein asked German attorney Nathan Gelbart to put the text of

Ms. Goldstein's letter on his company's letterhead (PriceWaterhouseCoopers), sign

it, and send it to Ms. Berman. Mr. Gelbart did so.

66.     The letter was absurd and Ms. Berman, in a series of communications

with Mr. Gelbart, deconstructed the letter's false statements. At the end of their

correspondence, Mr. Gelbart told Ms. Berman how much he respected her and her

work.

67.     Ms. Goldstein has circulated Mr. Gelbart's original letter, without his

permission, to Jewish leaders around the United States in an effort to paint

Ms. Berman as a liar, harass Ms. Berman, and frivolously threaten Jewish leaders

if they host Ms. Berman or ZMI on their platforms. She has not included the

correspondence that debunks the false claims in Mr. Gelbart's letter.

68.     Ms. Goldstein began obtaining ZMI emails and notifications either

through subscription under a false name or other means (she was removed from the

ZMI's email list based on her actions). Immediately after ZMI would send its

supporters updates about events or speaking engagements by Ms. Berman, Ms. Goldstein would send threatening, grossly frivolous letters to Jewish leaders who had hosted Ms. Berman or had plans to do so.

69.    During the summer of 2019, Ms. Goldstein, in her capacity as Executive Director of LPI, sent frivolous and harassing letters to each of ZMI's board members threatening them as members of the ZMI Board.

70.    Ms. Goldstein has threatened several colleagues of Ms. Berman who also worked with Ms. Goldstein and LPI—including the accountant and the public relations team—telling them that she (Ms. Goldstein) would terminate their business relationships for continuing to work with Ms. Berman and ZMI because doing so was a "conflict of interest."

71.    Ms. Goldstein and LPI had a legal team harass the graphic designer who created the ZIONESS logo. Incredibly, in October 2019, she caused LPI to register a copyright for several images developed by the graphic designer for the Zioness movement in the summer and fall of 2017!

72.    Ms. Goldstein has contacted donors, professionals, and mutual colleagues in a very small Jewish professional community to ask them to "not be friends with" Ms. Berman and to falsely accuse Ms. Berman of wrongdoing.

73.    Ms. Goldstein defamed Ms. Berman and ZMI by telling people that ZMI was a radical leftist organization and that Ms. Berman was covering up antisemitism in the progressive space.

74.     In September 2019, nine full months after Ms. Berman had left LPI, Ms. Goldstein worked with a blogger to release a series of what she thought to be uncomplimentary pieces on Ms. Berman and ZMI, with patently false and outrageous claims, and posted long rants on social media attacking and disparaging Ms. Berman.

75.     On October 28, 2019, Ms. Goldstein filed a meritless, competing trademark application for the ZIONESS mark. The competing trademark application was rejected by the USPTO.

76.     When Ms. Goldstein submitted the competing trademark application she knew or should have known that (i) ZMI's application had been filed on April 11, 2018 and was already past the public comment phase; and (ii) neither LPI nor Ms. Goldstein had any legal basis to attempt to claim ownership of the mark.

77.     Ms. Goldstein has no legitimate use for the ZIONESS mark, which would have absolutely no value without the national organization Ms. Berman built around it over the last three years—an organization that Ms. Goldstein claims to despise.

78.     In October 2020, a new Twitter account appeared with a name which is confusingly similar to the one maintained by ZMI. Specifically, the Twitter handle @TheSmartZioness purported to be named "Zioness Movement."

79.     This account was not authorized by ZMI and engaged in impersonation and trademark infringement. It used the same name as ZMI ("Zioness Movement")

and the same imagery used by ZMI and claimed to be "The smarter progressive civil rights movement."

80.    Upon information and belief, @TheSmartZioness is being run by Ms. Goldstein.

81.    The account @TheSmartZioness has authored and posted a series of tweets that violated ZMI's registered mark and impersonated ZMI.

82.    In some of the tweets, the author claims ownership of ZMI and the ZIONESS mark, but in other tweets the author criticizes ZMI and its founder.

83.    ZMI and Ms. Berman, through counsel, reported the account to Twitter and Twitter took action against the account. The account has since changed its name to ZionessMovementParody.

84.    On August 10, 2020, LPI filed a petition with the USPTO, the Trademark Trial and Appeal Board to cancel the registration of the Zioness trademark, alleging that ZMI is not a rightful owner of the ZIONESS mark.

85.    The cancellation proceeding before the USPTO is still pending, but ZMI will request that the proceeding be stayed in favor of resolution of the instant action.

## COUNT I

## Declaratory Judgment That Zioness Movement Inc. Is the Owner of the ZIONESS Trademark

86.    Plaintiff hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

87.    The Declaratory Judgment Act provides in relevant part:

> In a case of an actual controversy within its jurisdiction . . .
> any court of the United States, upon the filing of an
> appropriate pleading, may declare the rights and other legal
> relations of any interested party seeking such declaration,
> whether or not further relief is or could be sought. Any such
> declaration shall have the force and effect of a final
> judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

88.     Plaintiff ZMI is the rightful owner of the ZIONESS trademark.

89.     As detailed above, Ms. Berman developed the ZIONESS mark and the brand. Ms. Berman transferred all rights to the mark to ZMI and ZMI registered the mark with the USPTO.

90.     LPI did not oppose registration of the ZIONESS mark after it had been granted.

91.     LPI filed a competing registration for the mark with the USPTO, but this competing registration was rejected.

92.     LPI has filed a Petition for Cancellation of ZMI's registered mark, asserting a claim of ownership over the ZIONESS trademark.

93.     ZMI should be declared the rightful owner of the ZIONESS trademark.


## COUNT II

**Declaratory Judgment That Zioness Movement Inc. Is an Independent Organization and Not a Subsidiary of The Lawfare Project, Inc. or Any Other Entity**

94.     Plaintiff hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

95.     Plaintiff ZMI is an independent non-profit entity and is not, and has never been, a subsidiary of LPI or any other entity.

96.     LPI and Ms. Goldstein have asserted that ZMI is a subsidiary organization or project of LPI. It is neither.

97.     ZMI should be declared to be an independent organization and not a subsidiary of LPI or of any other entity.

98.     Further, the Court should declare that Ms. Goldstein does not have, and never had, an ownership interest in ZMI. As a non-profit entity, neither Ms. Goldstein nor anyone else can own ZMI.

## COUNT III

### Trademark Infringement in Violation of Section 32 of the Lanham Act
### (15 U.S.C. § 1114)

99.     Plaintiff hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

100.    Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant:

> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

101.    The ZIONESS trademark is federally registered and is entitled to protection under both federal and common law.

102.    The ZIONESS trademark is distinctive and associated in the minds of the public with Plaintiff.

103.    LPI has used the ZIONESS trademark in connection with LPI's website. LPI's unauthorized use is likely to cause confusion, to cause mistake, and to deceive consumers (including donors and supporters) as to the source or origin of the articles and messages distributed by LPI and to cause them to mistakenly believe that the work of LPI is the same as ZMI's work or that LPI and ZMI are otherwise affiliated, connected, or associated in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

104.    Ms. Goldstein and/or LPI used the ZIONESS trademark in connection with a Twitter account without ZMI's consent or authorization. This unauthorized use is likely to cause confusion and mistake in the minds of the public.

105.    At all relevant times, Defendant had actual and direct knowledge of Plaintiff's prior use and ownership of the ZIONESS trademark.

106.    Defendant's acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

107.    Defendant's acts have caused, and will continue to cause, irreparable injury to Plaintiff.

108.    ZMI is entitled to injunctive relief and, also, ZMI is entitled to recover its damages, costs and reasonable attorney's fees, including the reasonable attorney's fees ZMI incurred in defending LPI's frivolous petition to cancel ZMI's mark with the USPTO.

## COUNT IV
## Trademark Infringement in Violation of Section 43(a) of the Lanham Act
## (15 U.S.C. § 1125)
## (Federal False Designation of Origin and Unfair Competition)

109.    Plaintiff hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

110.    LPI's claims that it founded ZMI and that ZMI continues to be a project of LPI constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

111.    The ZIONESS trademark is federally registered and is entitled to protection under both federal and common law.

112.    LPI's unauthorized use of the ZIONESS trademark constitutes unfair competition and the use of a false designation of origin that is likely to cause confusion and deceive donors and supporters as to the impression that ZMI is associated with, and a project of, LPI, and that statements made, and actions taken, by LPI are authorized by, or otherwise associated with ZMI, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

113.    LPI's unauthorized use of the ZIONESS trademark has caused and, unless enjoined, will continue to cause substantial and irreparable injury to ZMI for which ZMI has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation associated with the ZIONESS trademark.

114.    Upon information and belief, LPI's infringement of the ZIONESS trademark is willful and reflects LPI's intent to trade on the goodwill and strong brand recognition associated with the ZIONESS trademark.

115.    ZMI has no adequate remedy at law. If LPI's use of the ZIONESS trademark is not enjoined, ZMI will suffer substantial and irreparable injury to its nonprofit reputation and the goodwill associated with its brand and the ZIONESS trademark.

## COUNT V

### Unfair Competition (NY Common Law)

116.    Plaintiff hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

117.    Six months after Ms. Berman left LPI to run ZMI fulltime, LPI added a page to its website identifying ZMI as a project of LPI.

118.    Before that time (June 2019), LPI had never claimed any relationship with ZMI.

119.    LPI claims on its website to have "founded, incubated, and funded" ZMI.

120.    ZMI learned that LPI was using its trademark and making false claims concerning ZMI on its website in or about June 2019, and demanded that LPI remove the ZIONESS mark and false statements.

121.    LPI did not remove the page concerning ZMI. It remains today.

122.    LPI's use of the ZIONESS trademark on its website and its claim that ZMI is a project of LPI constitutes common law trademark infringement.

123.   The ZIONESS trademark is federally registered and is used in New York and elsewhere extensively. It is entitled to protection under both federal law and New York common law.

124.   LPI's unauthorized use of the ZIONESS trademark is likely to cause confusion and deceive donors and supporters as to the origin, sponsorship, or approval of LPI's conduct and messages by creating the false and misleading impression that LPI's conduct is authorized by, or otherwise associated with, ZMI.

125.   LPI's unauthorized use of the ZIONESS trademark has caused and, unless enjoined, will continue to cause substantial and irreparable injury to ZMI for which it has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation associated with the ZIONESS trademark.

126.   Upon information and belief, LPI's infringement of the ZIONESS trademark is willful and reflects LPI's intent to trade on the goodwill and strong brand recognition associated with the ZIONESS trademark.

127.   Upon information and belief, LPI's infringement of the ZIONESS trademark has been deliberate and calculated, resulting in confusion and deception among donors and supporters as to the origin, sponsorship, or approval of LPI's conduct, and resulting in damages to ZMI.

128.   Upon information and belief, LPI's prosecution of a meritless petition to cancel ZMI's federally registered trademark was willful, deliberate and calculated to cause ZMI to expend significant sums on attorney's fees to defend the baseless suit

and for the improper purpose of intimidating ZMI and not for any legitimate, lawful purpose.

129.   ZMI is entitled to injunctive relief and is also entitled to recover its damages, costs, and reasonable attorney's fees, including the reasonable attorney's fees ZMI incurred in defending LPI's frivolous petition to cancel ZMI's mark with the USPTO.

130.   ZMI is entitled to punitive damages because LPI's conduct has been gross, wanton, and fraudulent to an extreme degree.

131.   LPI's conduct constitutes trademark infringement in violation of the common law of the State of New York.

WHEREFORE, Plaintiff prays for judgment against Defendant as set forth hereinabove and as follows:

(i)     Enter judgment in Plaintiff's favor and against Defendant on all counts raised herein; and

(ii)    Declare that Plaintiff is the owner of the ZIONESS trademark; and

(iii)   Declare that Plaintiff is an independent organization and not a subsidiary of The Lawfare Project, Inc. or any other entity or person; and

(iv)    Award Plaintiff damages for Defendant's trademark infringement of Plaintiff's registered mark ZIONESS; and

(v)     Enjoin Defendant from continuing to use the ZIONESS trademark in any way, shape, or form; and

(vi)    Award Plaintiff damages, including punitive damages, for Defendant's unfair competition based on its unauthorized use of Plaintiff's registered mark ZIONESS; and

(vii)   Award Plaintiff the costs, disbursements, and expenses of this action, including attorney's fees related to this action and to the baseless pending TTAB cancellation proceeding; and

(viii)  Grant Plaintiff such other and further relief as this Court deems just and proper.

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
       September 3, 2021

FELICELLO LAW P.C.


By:  */s/ Rosanne E. Felicello*
     Rosanne E. Felicello
     Michael James Maloney
366 Madison Avenue, 3rd Floor
New York, New York 10017
Tel. 212-584-7806
rosanne@felicellolaw.com

*Attorneys for Plaintiff*
*Zioness Movement Inc.*