**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ZIONESS MOVEMENT, INC.,

              Plaintiff,

 -against-

THE LAWFARE PROJECT, INC.,

              Defendant.

Case No. 1:21-cv-07429-AKH-DCF

THE LAWFARE PROJECT, INC.,

              Counterclaim Plaintiff,

 -against-

ZIONESS MOVEMENT, INC.,

              Counterclaim Defendant.

**BENCH MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................. 1

I.   "[A] trademark is not property in the ordinary sense, but only a word or symbol indicating the origin or source of a product [or service]." ..................................... 1

II.   Trademark rights are acquired solely by *use in public* that identifies the *source* of the services being offered. ............................................................................... 3

III.   First use of a mark, alone, is insufficient to establish priority over another. ...... 5

IV.   Registration of a mark creates a presumption of the right to exclusive use by the registrant. ............................................................................................... 6

V.   ZIONESS is a protectable mark. ....................................................................... 7

VI.   Trademark rights cannot be separated from the good will of the business. ......... 9

VII.   The license asserted by Defendant must be in writing to be enforceable. .......... 10

VIII.   ZMI was legally entitled to claim Ms. Berman and the pre-incorporation Zioness Movement as predecessor in its application to register the mark ZIONESS. ......................................................................................................... 11

IX.   The jury should determine witness credibility. .................................................. 12

X.   LPI's infringement on ZMI's trademark was willful. ......................................... 13

XI.   Fraud on the PTO ............................................................................................ 14

XII.   Nominative fair use applies to use of a mark that identifies the owner of the mark; it does not apply to uses of a mark that confuses the source of the owner or its services. ........... 16

CONCLUSION ........................................................................................................ 17

# TABLE OF AUTHORITIES

## Cases

*4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 209–10 (2d Cir. 2019) ..........17

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 14 (2d Cir. 1976)....................11

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 796 F. Supp. 2d 458, 465 (S.D.N.Y. 2011)......................................................................................2

*Am. Ort, Inc. v. Israel*, No. 07 CV 2332(KMK), 2007 WL 2049733, at *7 (S.D.N.Y. July 17, 2007) .............................................................................................................................................2

*Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989).......................14

*Avon Shoe Co. v. David Crystal, Inc.*, 171 F. Supp. 293, 300–01 (S.D.N.Y. 1959), *aff'd*, 279 F.2d 607 (2d Cir. 1960) ...........................................................................................................12

*Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1266 (5th Cir. 1975)................................2, 3

*C=Holdings B. V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 239 (S.D.N.Y. 2013).....................11

*Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 433 (S.D.N.Y. 2019) ...........11

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 217 n.10 (2d Cir. 2012)...........................................................................................................................11

*Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1353 (E.D.N.Y. 1994) ..................................................................................................................18, 19

*Dress for Success Worldwide v. Dress 4 Success*, 589 F. Supp. 2d 351, 358 (S.D.N.Y. 2008) 10

*Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 F. App'x 26, 31 (2d Cir. 2013)...........17

*Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co.*, 647 F. Supp. 3d 145, 195 (S.D.N.Y. 2022) .10

*Full Circle United, LLC v. Skee-Ball, Inc.*, No. 11 CV 5476 (LB), 2014 WL 12829195, at *7 (E.D.N.Y. May 13, 2014) .....................................................................................................13, 14

*Fusco Grp., Inc. v. Loss Consultants Int'l, Inc.*, 462 F. Supp. 2d 321, 327 (N.D.N.Y. 2006) ...7

*Gameologist Grp., LLC v. Sci. Games Int'l, Inc.*, 838 F. Supp. 2d 141, 158 (S.D.N.Y. 2011), *aff'd*, 508 F. App'x 31 (2d Cir. 2013) ...........................................................................6

*Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997) ........................9

*Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing and Pub. Co. v. Mered Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993) ...........................................................................................8

*Haggar Int'l Corp. v. United Co. for Food Indus. Corp.*, 906 F. Supp. 2d 96, 127 (E.D.N.Y. 2012) ..........................................................................................................................................20

*Indus. Rayon Corp. v. Dutchess Underwear Corp.*, 92 F.2d 33, 35 (2d Cir. 1937) ...................1

*International Information Systems Sec. Certification Consortium, Inc. v. Security University, LLC*, 823 F.3d 153, 165 (2d Cir. 2016)...............................................................21

*Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)17

*ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir. 2007) ...................................................8

*La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271–72 (2d Cir. 1974) ................................................................................................................5, 7

*Marshall v. Marshall*, No. 08 CV 1420 LB, 2012 WL 1079550, at *17 (E.D.N.Y. Mar. 30, 2012), *aff'd,* 504 F. App'x 20 (2d Cir. 2012) ...........................................................6

*McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979) ...........................4

*Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 413 (S.D.N.Y. 2006) ........................................................................................................................21

*Modular Cinemas of Am., Inc. v. Mini Cinemas Corp.*, 348 F. Supp. 578, 582 (S.D.N.Y. 1972) ..................................................................................................................1, 4

*Oscar Prods., Inc. v. Zacharius*, 893 F. Supp. 250, 255 (S.D.N.Y. 1995) ................................14

*Pan Am World Airways, Inc. v. Flight 001, Inc.*, No. 06 Civ. 14442, 2007 WL 2040588, at *11, 2007 U.S. Dist. LEXIS 51012, at *31 (S.D.N.Y. July 13, 2007) ...................................10

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 530 (S.D.N.Y. 2012) .7

*Pirone v. MacMillan, Inc.*, 894 F.2d 579, 581 (2d Cir. 1990).......................................................1

*Privado Mktg. Grp. LLC v. Eleftheria Rest Corp.*, No. 13 CIV. 3137 (ER), 2017 WL 1167332, at *10 (S.D.N.Y. Mar. 27, 2017) ...........................................................................7

*Randle v. Credit Agricole Indosuez*, 670 F.3d 411, 419 (2nd Cir. 2012) ................................16

*Roberto Coin, Inc. v. Goldstein*, No. 18-CV-4045(EK)(ST), 2021 WL 4502470, at *14 (E.D.N.Y. Sept. 30, 2021)........................................................................................13

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 319 (S.D.N.Y. 2012)........................................................................................6

*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010)................................................20

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ................................................9

*World Trade Centers Ass'n, Inc. v. Port Auth. of New York & New Jersey*, No. 15 CV 7411-LTS-RWL, 2018 WL 6628840, at *18 (S.D.N.Y. Dec. 18, 2018), on reconsideration, No. 15 CV 7411-LTS-RWL, 2019 WL 2250338 (S.D.N.Y. May 23, 2019) ......................................15

Plaintiff Zioness Movement Inc. ("ZMI" or "Plaintiff") respectfully submits this memorandum of law in support of Plaintiff's Second Amended Proposed Jury Instructions.

## ARGUMENT

### I.      "[A] trademark is not property in the ordinary sense, but only a word or symbol indicating the origin or source of a product [or service]."[1]

"The owner of the mark acquires the right to prevent his goods from being confused with those of others and to prevent his own trade from being diverted to competitors through their use of misleading marks." *Pirone*, 894 F.2d at 581. "'There are no rights in a trade-mark beyond these.'" *Pirone*, 894 F.2d at 581 quoting *Indus. Rayon Corp. v. Dutchess Underwear Corp.*, 92 F.2d 33, 35 (2d Cir. 1937). "The gist of trademark rights is its actual use in trade." *Modular Cinemas of Am., Inc. v. Mini Cinemas Corp.*, 348 F. Supp. 578, 582 (S.D.N.Y. 1972). In order to give rise to trademark rights, the mark must be "use[d] in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark, is competent to establish ownership." *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1266 (5th Cir. 1975).

In addition to identifying the "merchandise of the owner," trademark rights may identify services—including nonprofit charitable services—offered by the owner. *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 796 F. Supp. 2d 458, 465 (S.D.N.Y. 2011) ("public service or benefit entities

---

[1] *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 581 (2d Cir. 1990) (internal citations and quotations omitted).

appear to receive greater protection than for-profit business organizations"). "A compelling reason for the enhanced judicial protection of a charity's trademarks is the public interest in ensuring their contributions to charitable organizations are received by the correct charity." *Id.* At 466. *See also Am. Ort, Inc. v. Israel*, No. 07 CV 2332(KMK), 2007 WL 2049733, at *7 (S.D.N.Y. July 17, 2007).

Here, Plaintiff alleges that it acquired trademark rights to the term ZIONESS on the ground that the term has been used by ZMI, and its predecessors, Ms. Berman and the pre-incorporation "Zioness Movement," in a way that was sufficiently public to identify Ms. Berman and Zioness Movement as the source of public advocacy for progressive Zionists. Plaintiff alleges that the Ms. Berman and the pre-incorporation Zioness Movement used the mark ZIONESS in public continuously since August 2017 for the purpose of public advocacy that is "unabashedly progressive" and "unapologetically Zionist." Plaintiff alleges that the ZIONESS mark has developed a meaning in the relevant market that identifies Ms. Berman and the Zioness Movement as the source of progressive, Zionist public advocacy.

Despite Defendant The Lawfare Project, Inc.'s ("LPI" or "Defendant") contends in its legal pleadings that it acquired rights to the mark ZIONESS. But none of the images, posters, or t-shirts depicted in the exhibits identify LPI as the source of public advocacy that is "unabashedly progressive" and "unapologetically Zionist." And Ms. Goldstein admitted at trial that Defendant knowingly engaged in a PR strategy to consciously disassociate LPI from the term ZIONESS in the eyes of the public. See Transcript 3/12/2024 at 689:2-690:1. Defendants rely entirely on a few emails from

early August 2017 that were sent from Lawfare Project email addresses or contain Lawfare project letterhead.

The Court should instruct the jury as to the unique nature of trademark rights as set out in legal authorities like *Pirone*, 894 F.2d at 581; *Indus. Rayon Corp.*, 92 F.2d at 35; *Am. Ort, Inc.*, 2007 WL 2049733, at \*7, and *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1266 (5th Cir. 1975), *i.e.*, that "a trademark is not property in the ordinary sense, but only a word or symbol indicating the origin or source of a product [or service]."

## II.     Trademark rights are acquired solely by *use in public* that identifies the *source* of the services being offered.

"[T]rademark rights are acquired and maintained through use of a particular mark." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146 (2d Cir. 2007), *citing Pirone*, 894 F.2d at 581. "[E]stablishing a particular term or symbol as a valid trademark 'depends ultimately on its distinctiveness, or its 'origin-indicating' quality, in the eyes of the purchasing public.'" *Pirone*, 894 F.2d at 582, quoting *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979).

"No rights are acquired through mere invention or creation of a name or symbol, or through mere adoption or the intention to use it." *Modular Cinemas of Am., Inc. v. Mini Cinemas Corp.*, 348 F. Supp. 578, 582 (S.D.N.Y. 1972). "The gist of trademark rights is its actual use in trade." *Modular Cinemas of Am., Inc.*, 348 F. Supp. at 582. "Thus, neither conception of the mark . . . nor advertising alone establishes trademark rights at common law" *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1265 (5th Cir. 1975) citing, among other authorities, *Modular Cinemas of*

*Am., Inc.*, 348 F. Supp. at 582.

"Priority is established not by conception but by bona fide usage." *Bell v. Streetwise Recs., Ltd.*, 640 F. Supp. 575, 580 (D. Mass. 1986). A user must show more than mere "[a]doption and a single use of the mark." *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271–72 (2d Cir. 1974). "To prove bona fide usage, the proponent of the trademark must demonstrate that his use of the mark has been deliberate and continuous, not sporadic, casual or transitory." *La Societe Anonyme des Parfums le Galion*, 495 F.2d at 1271–72.

The Court should charge the jury that their determination as to ownership of trademark rights to ZIONESS must be based on evidence showing use of the term ZIONESS that is sufficiently public to identify the mark ZIONESS with the source of progressive, Zionist public advocacy, and which was "continuous, not sporadic or transitory."

The Court should instruct the jury to disregard all evidence regarding the identity of the persons who conceived of or paid for the term ZIONESS. The identity of the persons who conceived of the term ZIONESS (Ilana Blum of Miller Ink) is legally irrelevant. It is only use in public that associated the term ZIONESS with progressive and Zionist public advocacy that is relevant to the issue of who acquired trademark rights to the mark.

The Court should also instruct the jury to disregard all evidence as to which party paid for development of the ZIONESS mark and other expenditures relating to the mark. A showing that one party spent money on advertising or marketing does

not establish that rights to a mark were acquired without a showing that the money spent resulted in an association in the minds of consumers with the party that spent the money. *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 319 (S.D.N.Y. 2012), *as amended* (Sept. 19, 2012) ("[M]erely showing that a certain amount was spent on advertising provides little support for secondary meaning absent some demonstration that the advertisements caused consumers to associate the service with [the party who spent money]") citing *Marshall v. Marshall*, No. 08 CV 1420 LB, 2012 WL 1079550, at *17 (E.D.N.Y. Mar. 30, 2012), *aff'd,* 504 F. App'x 20 (2d Cir. 2012) and *Gameologist Grp., LLC v. Sci. Games Int'l, Inc.*, 838 F. Supp. 2d 141, 158 (S.D.N.Y. 2011), *aff'd,* 508 F. App'x 31 (2d Cir. 2013).

### III.   First use of a mark, alone, is insufficient to establish priority over another.

"Where claimants dispute the right to use a particular trademark, the general rule is that priority of appropriation and use determines which litigant will prevail in its use." *Privado Mktg. Grp. LLC v. Eleftheria Rest Corp.*, No. 13 CIV. 3137 (ER), 2017 WL 1167332, at *10 (S.D.N.Y. Mar. 27, 2017) citing *Fusco Grp., Inc. v. Loss Consultants Int'l, Inc.*, 462 F. Supp. 2d 321, 327 (N.D.N.Y. 2006) and *Modular Cinemas of Am., Inc.*, 348 F. Supp. at 581. A user must show more than mere "[a]doption and a single use of the mark." *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271–72 (2d Cir. 1974).

"The first user who continuously uses an inherently distinctive service mark in the relevant market is the senior user and has priority over any second comers."

Case 1:21-cv-07429-AKH   Document 193   Filed 03/13/24   Page 10 of 21

*Privado Mktg. Grp. LLC v. Eleftheria Rest Corp.*, No. 13 CIV. 3137 (ER), 2017 WL 1167332, at *10 (S.D.N.Y. Mar. 27, 2017), citing *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 530 (S.D.N.Y. 2012). "Thus, so long as a person is the first to use a particular mark *to identify his goods or services in a given market*, and so long as that owner continues to make use of the mark, he is entitled to prevent others from using the mark to describe their own goods in that market." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir. 2007) (emphasis added) (internal citations and quotations omitted).

Here, the Court should instruct the jury to disregard DX-6, DX-40, and all other testimony evidence purporting to show that LPI's name was used in connection with ZIONESS in August 2017. In light of Ms. Goldstein's testimony, Transcript 3/12/2024 at 689:2-690:1, and the other competent evidence developed at trial showing a continuous us in public by Ms. Berman and Zioness Movement that identified her and Zioness Movement as the source of progressive and Zionist public advocacy, any fleeting association between LPI and the term ZIONESS in August 2017 is legally insufficient to give rise to any trademark rights in LPI.

In the alternative, the Court should charge the jury that a single use of a trademark alone is not sufficient to establish priority in a trademark without a showing that the use of the mark is to identify the source of goods or services in a given market and so long as the user continues to use the mark as a source identifier.

## IV. Registration of a mark creates a presumption of the right to exclusive use by the registrant.

"The Lanham Act of 1946 provides that a mark registered by its owner shall

be prima facie evidence of the registrant's exclusive right to use the mark in commerce . . ." *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing and Pub. Co. v. Mered Corp., 991 F.2d 1072, 1076 (2d Cir. 1993)*.

### V.        ZIONESS is a protectable mark.

"[T]rademarks are divided into five general categories of distinctiveness: 1) generic; 2) descriptive; 3) suggestive; 4) arbitrary; and 5) fanciful." *Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997)*, citing *Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)*. "A generic mark is generally a common description of goods." *Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 143 (2d Cir. 1997)* (citations and quotations omitted). "[T]he term 'fanciful', as a classifying concept, is usually applied to words invented solely for their use as trademarks. When the same legal consequences attach to a common word, *i.e.,* when it is applied in an unfamiliar way, the use is called 'arbitrary.'" *Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 143 (2d Cir. 1997)* (citations omitted). "Marks that are arbitrary, fanciful, or suggestive are considered "inherently distinctive," and are automatically entitled to protection under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*." *Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 143 (2d Cir. 1997)* citing ng *Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)*.

Here, the Court should instruct the jury that the mark ZIONESS is an inherently distinctive mark entitled to protection under the Lanham Act. The mark was created by Miller Ink specifically for the purpose of creating a new movement that would be used after the August 2017 Slut Walk. Ms. Goldstein testified that she

could not recall ever hearing the word ZIONESS before its creation for the Slut Walk.

In addition, "[a] mark is presumed to merit protection when the plaintiff has a valid, registered trademark." *Dress for Success Worldwide v. Dress 4 Success*, 589 F. Supp. 2d 351, 358 (S.D.N.Y. 2008), citing *Pan Am World Airways, Inc. v. Flight 001, Inc.*, No. 06 Civ. 14442, 2007 WL 2040588, at *11, 2007 U.S. Dist. LEXIS 51012, at *31 (S.D.N.Y. July 13, 2007). "A certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (i.e., protect[a]ble), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in. commerce." *Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co.*, 647 F. Supp. 3d 145, 195 (S.D.N.Y. 2022), quoting *Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 433 (S.D.N.Y. 2019) (quoting *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 217 n.10 (2d Cir. 2012)) (alteration in *Capri Sun*). "As such, when a plaintiff sues for infringement of its registered mark, the defendant bears the burden of production and persuasion to rebut the presumption of ownership." *Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co.*, 647 F. Supp. 3d 145, 195 (S.D.N.Y. 2022), quoting *C=Holdings B. V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 239 (S.D.N.Y. 2013) (citing, inter alia, *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 14 (2d Cir. 1976)).

The jury should be instructed that ZMI is the registrant of a valid, registered trademark, ZMI is presumed to be the owner with the exclusive right to use the mark in commerce. The jury should also be instructed LPI bears the burden of production and persuasion to rebut that presumption.

## VI.    Trademark rights cannot be separated from the good will of the business.

"The Lanham Act provides that a trade-mark may be legally assignable only 'with the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of and symbolized by the mark." *Avon Shoe Co. v. David Crystal, Inc.*, 171 F. Supp. 293, 300–01 (S.D.N.Y. 1959), *aff'd,* 279 F.2d 607 (2d Cir. 1960). "Without the transfer of some business with which the mark has been used, the assignment is a void assignment in gross and conveys no title to the assignee. *Avon Shoe Co.,* 171 F. Supp. at 301, *aff'd,* 279 F.2d 607 (2d Cir. 1960).

Here, LPI claims that it acquired rights to the trademark ZIONESS without any connection in the eyes of the public between the mark ZIONESS and LPI. Specifically, Ms. Goldstein's testified that LPI told the press (and therefore the public) that Ms. Berman was the founder of the Zioness Movement and that the pre-incorporation Zioness Movement was the source of the progressive, Zionist public advocacy identified with the term ZIONESS. Once there became established in the public an association between the mark ZIONESS and Ms. Berman and Zioness Movement, Ms. Berman and Zioness Movement acquired trademark rights, not LPI. Therefore, LPI had not trademark rights to transfer by license or otherwise.

The Court should charge the jury to disregard all evidence suggesting that LPI had acquired any rights to the trademark ZIONESS.

**VII.    The license asserted by Defendant must be in writing to be enforceable.**

"The interpretation and enforcement of trademark licenses are governed by state contract law in the same manner as patent and trade secret licenses." § 11:2. Trademark licensing, Licensing Law Handbook § 11:2. Under New York law, a "perpetual license agreement . . . is subject to the Statute of Frauds' requirement that it be reduced to (or evidenced by) a signed writing" *Roberto Coin, Inc. v. Goldstein,* No. 18-CV-4045(EK)(ST), 2021 WL 4502470, at *14 (E.D.N.Y. Sept. 30, 2021) citing N.Y. Gen. Oblig. Law § 5-701 (McKinney) and *Full Circle United, LLC v. Skee-Ball, Inc.,* No. 11 CV 5476 (LB), 2014 WL 12829195, at *7 (E.D.N.Y. May 13, 2014) ("As the 2005 oral contract alleged herein does not specify a duration, and contains no provision under which either party might rightfully terminate it within the year of its making, it comes within the ambit of the Statute of Frauds") (internal citations and quotations omitted)

"To prove that an oral license exists, Plaintiffs must establish "all essential terms" of the contract, such as offer, acceptance, and consideration "with sufficient definiteness that the Court can interpret its terms." *Privado Mktg. Grp. LLC v. Eleftheria Rest Corp.,* No. 13 CIV. 3137 (ER), 2017 WL 1167332, at *12 (S.D.N.Y. Mar. 27, 2017) citing *Oscar Prods., Inc. v. Zacharius,* 893 F. Supp. 250, 255 (S.D.N.Y. 1995). "Where an alleged contract is oral, the party alleging the contract has the heavy burden of establishing objective signs of the parties' intent to be bound. *Id.* The burden is heavier in oral agreements because a primary concern for courts in such disputes is to avoid trapping parties in surprise contractual obligations that they

never intended." *Id.* citing *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989).

Here, Ms. Goldstein testified that the alleged license agreement had no terminal date. Transcript 710:4-:19. Thus, the license alleged by LPI here "does not specify a duration, and contains no provision under which either party might rightfully terminate it within the year of its making, it comes within the ambit of the Statute of Frauds." *Full Circle United, LLC v. Skee-Ball, Inc.*, No. 11 CV 5476 (LB), 2014 WL 12829195, at *7 (E.D.N.Y. May 13, 2014). Because Ms. Goldstein conceded on the stand that the license was not reduced to a writing, Transcript 637:9-:10, it is unenforceable.

The Court should instruct the jury to disregard LPI's license defense and all evidence relating to that assertion because the alleged license was perpetual in term and there has been no evidence that reduced to a writing.

**VIII.   ZMI was legally entitled to claim Ms. Berman and the pre-incorporation Zioness Movement as predecessor in its application to register the mark ZIONESS.**

"37 C.F.R. section 2.38(a) explicitly permits an applicant to claim the date a related company or predecessor in title first used the mark if the applicant concurrently discloses that first use was by a predecessor." *World Trade Centers Ass'n, Inc. v. Port Auth. of New York & New Jersey*, No. 15 CV 7411-LTS-RWL, 2018 WL 6628840, at *18 (S.D.N.Y. Dec. 18, 2018), on reconsideration, No. 15 CV 7411-LTS-RWL, 2019 WL 2250338 (S.D.N.Y. May 23, 2019).

Ms. Goldstein testified that the statements made to the media in August 2017

portrayed Ms. Berman as the "co-founder" of "Zioness":

> BY MS. FELICELLO:
>
> Q. And you were aware in August of 2017 that it had been reported that Amanda Berman was, in fact, the founder of Zioness, right?
>
> MR. SOLOMON: Objection.
>
> THE COURT: Overruled.
>
> THE WITNESS: We had told the media that Amanda Berman was the cofounder of Zioness, leaving the other cofounder mysterious and unknown. That was the PR strategy.

Transcript 3/12/2024 at 689:2-690:1.

Ms. Berman testified that after the initial public use identifying her as the cofounder of Zioness, Ms. Berman and the pre-incorporation Zioness Movement continued to use the mark in a way that associated herself and Zioness Movement as the source of progressive, Zionist public advocacy.

Accordingly, the Court should instruct the jury to disregard all evidence offered for the proposition that ZMI's claim to the date of first use by Ms. Berman's and the pre-incorporation Zioness Movement was false.

## IX.    The jury should determine witness credibility.

In this action, Ms. Goldstein has offered bare testimony in support of certain of Defendant LPI's factual contentions, including the alleged existence of an oral license agreement, actions by LPI to "police the mark," and certain discussions with Ms. Berman and others that are not substantiated by documentary evidence.

The credibility of a witness is a matter for the jury to determine. *Randle v. Credit Agricole Indosuez, 670 F.3d 411, 419 (2nd Cir. 2012).* The jury should be

instructed that it may decide to consider the credibility (or lack thereof) of Ms. Goldstein's testimony in determining the facts of this case.

## X.        LPI's infringement on ZMI's trademark was willful.

15 U.S.C. § 1117(c)(2) provides that in the event of a finding that infringement was "willful," the jury may award statutory damages of up to $2,000,000 per counterfeit use. 15 U.S.C § 1117(c)(2).[2] A finding of willful infringement constitutes an "exceptional case," in which the Court may award reasonable attorney fees to the prevailing party. 15 U.S.C. 1117(a).

To prove a willful infringing use under the Lanham Act "a plaintiff must show "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard ... or willful blindness." _4 Pillar Dynasty LLC v. New York & Co., Inc._, 933 F.3d 202, 209–10 (2d Cir. 2019) citing _Island Software & Comput. Serv., Inc. v. Microsoft Corp._, 413 F.3d 257, 263 (2d Cir. 2005) (internal quotation marks omitted); see also _Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc._, 507 F. App'x 26, 31 (2d Cir. 2013) (applying Copyright Act definition to Lanham Act claim) (summary order)

Here, the Court should instruct the jury that if it finds that LPI was aware of the post on its website claiming to have "founded, incubated, and funded the Zioness Movement" and is aware of the posts it made by LPI on @TheSmartZioness or even if LPI recklessly disregarded or was willfully blind to these infringing activities, then

---

[2] The issue of willfulness may properly be submitted to the jury. _4 Pillar Dynasty LLC v. New York & Co., Inc._, 933 F.3d 202, 210 (2d Cir. 2019).

the jury should find that LPI willfully infringed ZMI's trademark.

## XI.        Fraud on the PTO

To succeed on a fraud on the PTO claim, LPI must establish the following by "clear and convincing evidence":

> "(1) A false representation regarding a material fact.
>
> (2) Knowledge or belief that the representation is false ("scienter").
>
> (3) An intention to induce the listener to act or refrain from acting in reliance upon the misrepresentation.
>
> (4) Reasonable reliance upon the misrepresentation.
>
> (5) Damage proximately resulting from such reliance."

*Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1353 (E.D.N.Y. 1994), citing 3 McCarthy § 31.21(2)(a), at 31:96.

Here, LPI contends that ZMI committed fraud by indicating the first use in commerce of the word ZIONESS in August 2017 and by claiming that the first use was by ZMI's predecessor in interest. LPI contends that it was the first to acquire trademark rights by use the mark ZIONESS in public.

LPI's fraud defense is legally defective because on its application to the US Patent and Trademark Office, ZMI was required to "disclose only those users who are known to have a *right* to use the same or a related mark. . . ." *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1353 (E.D.N.Y. 1994) (emphasis in original) citing 37 C.F.R. § 2.33(b)(1). "The applicant has no obligation, however, to disclose known users believed to be infringing the applicant's rights in the mark." *Id.* (citations omitted).

Here, LPI had no "right to use the same or a related mark" because it never used the mark in a way sufficiently public to identify LPI as the source of progressive and Zionist public advocacy. As Ms. Goldstein testified it was LPI's intent to identify Ms. Berman as the founder of Zioness Movement in the eyes of the public and to conceal from the public any involvement of LPI. Accordingly, there is no evidence— and no reasonable jury could find—that LPI had any "right to use the same or a related mark" when ZMI filed its application to register the ZIONESS mark. *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1353 (E.D.N.Y. 1994) (emphasis in original) citing 37 C.F.R. § 2.33(b)(1).

The Court should decline to charge the jury on LPI's fraud on the USPTO defense. First, LPI cannot establish that ZMI committed fraud on the PTO by showing an inaccuracy in the first use date included on the application because the first use date was not material to the PTO's decision to register the mark where there was no competing mark claiming a superior first use. *Haggar Int'l Corp. v. United Co. for Food Indus. Corp.*, 906 F. Supp. 2d 96, 127 (E.D.N.Y. 2012) (holding that "even if [Plaintiff] provided an inaccurate date of first use in its 1989 trademark application, this alone does not constitute fraud on the USPTO. To rise to the level of fraud, the false statement must be made knowingly and have been material to the USPTO's decision to grant [Plaintiff's] trademark application").

Second, there is now evidence elicited at trial establishing the existence of any other known users of the ZIONESSS mark at the time ZMI filed its application.

**XII.**   **Nominative fair use applies to use of a mark that identifies the owner of the mark; it does not apply to uses of a mark that confuses the source of the owner or its services.**

"The doctrine of nominative fair use allows '[a] defendant [to] use a plaintiff's trademark to identify *the plaintiff's goods* so long as there is no likelihood of confusion about the source of [the] defendant's product or the mark-holder's sponsorship or affiliation.'" *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010) quoting *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 413 (S.D.N.Y. 2006). "A defendant may use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of defendant's product or the mark-holder's sponsorship or affiliation." *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 413 (S.D.N.Y. 2006); *International Information Systems Sec. Certification Consortium, Inc. v. Security University, LLC*, 823 F.3d 153, 165 (2d Cir. 2016).

Here, despite LPI's assertion of a nominative use defense in the pleadings, the evidence at trial shows that LPI's use of the term ZIONESS beginning in June 2019 was not for the purpose of identifying Zioness Movement, Inc as the source of progressive, Zionist public advocacy. Rather, LPI's use of the mark for the purpose of *claiming* ownership of the mark itself and of improperly claiming an association between LPI and ZMI, is a use that falls entirely outside the scope of the theory of nominative fair use.

The Court should decline to charge the jury on LPI's nominative fair use defense and otherwise instruct the jury to disregard any evidence offered by LPI in support of the nominative fair use defense.

## CONCLUSION

For all the foregoing reasons, the Court should charge the jury with Plaintiff's

Second Amended Proposed Jury Instructions, and grant such other and further relief

as the Court deems just and proper.

Dated: New York, New York          Respectfully submitted,
      March 13, 2024

                                 FELICELLO LAW P.C.

                                 By:   */s/ Michael James Maloney*
                                      Rosanne E. Felicello
                                      Kristie M. Blase
                                      Michael James Maloney
                               366 Madison Avenue, 3rd Floor
                               New York, New York 10017
                               Tel. (212) 584-7806
                               rosanne@felicellolaw.com
                               kristie@felicellolaw.com
                               *Counsel for Zioness Movement, Inc. and Amanda Berman*