UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                :
ZIONESS MOVEMENT INC.,       :
                :    **ORDER DENYING PLAINTIFF'S**
        Plaintiff / Counterclaim Defendant,  :    **POST-TRIAL MOTIONS**
                :
        -against-                :    21 Civ. 7429 (AKH)
                :
THE LAWFARE PROJECT, INC.,    :
                :
        Defendant / Counterclaim Plaintiff.  :

-------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        After an eight-day trial in March 2024, the jury issued a verdict, answering questions on a form agreed to by both parties, that both Plaintiff Zioness Movement, Inc. ("ZMI") and Defendant The Lawfare Project, Inc. ("LPI") owned the ZIONESS trademark, and that LPI had failed to prove by clear and convincing evidence that ZMI had committed fraud on the U.S. Patent and Trademark Office ("USPTO") by registering the trademark as its own. *See* ECF No. 198. Judgment was entered on March 27, 2024. *See* ECF No. 201.

        ZMI moves for judgment as a matter of law under Fed. R. Civ. P. 50(b), for a new trial pursuant to Fed. R. Civ. P. 59(a), and for an amended judgment pursuant to Fed. R. Civ. P. 59(e). For the reasons that follow, ZMI's motions are denied.

## BACKGROUND

        The evidence at trial showed that "Zioness" was coined by LPI's counsel, at the instigation of Brooke Goldstein, the founder and executive director of LPI, and Amanda Berman, then the director of legal affairs at LPI, in August 2017. Goldstein and Berman planned to use Zioness to promote Jewish American participation in a feminist march in Chicago scheduled for

1

August 12, 2017, that had advertised plans to exclude Jewish organizations, ostensibly because of their identification with Israel.

Goldstein founded LPI as a non-profit corporation in 2011 to defend against the marginalization of Jewish people and combat antisemitism through litigation and investigations. Goldstein and Berman, with the help of LPI's lawyers and public relations consultant, and at LPI's expense, created ZIONESS to brand the movement they hoped to inspire. Goldstein and Berman were concerned that LPI should not identify itself with the march for fear of disturbing LPI's donor base, and developed ZIONESS as the brand to organize a progressive Zionist feminist movement. They used LPI's funds, LPI's fundraising channels, and LPI's lawyers and design firm. *See, e.g.,* Trial Tr. at 522:12–523:10. They distributed information about how to join the ZIONESS group for the August 2017 march in Chicago from LPI's email accounts.

In August 2017, Berman stated that ZIONESS was "definitely a project of [LPI]," DX-30, and Goldstein instructed LPI's lawyers to classify ZIONESS as a project of LPI. PX-41. However, rather than Goldstein serving as the face of the operation as she usually did for LPI projects, Berman was designated as the face of the ZIONESS movement, so that the progressive vision for ZIONESS would be distinct from LPI and from Goldstein's personal affiliation with more conservative advocacy. Goldstein testified that she maintained oversight of internal decision-making for ZIONESS in the same manner she had oversight for any other LPI project. In October 2017, LPI's lawyers working on the trademark application considered LPI to be the applicant, though Berman testified that the lawyers were not apprised of her intentions to identify a soon-to-be corporation as the registrant of the trademark. PX-75; Trial Tr. 291:10–298:2.

The evidence also showed that while employed at LPI, Berman worked on Zioness-related work on nights and weekends, that her employment agreement permitted her to

2

take on outside work, and that she used her own funds to incorporate ZMI in February 2018. She filed the ZIONESS trademark registration application under ZMI's name with the USPTO in April 2018. Although Goldstein knew that Berman was involved in promoting Zioness as a movement separately from LPI, Goldstein testified that she did not know that Berman had filed a trademark registration application under ZMI's name. *See, e.g.*, Trial Tr. 642:5–8. In October 2018, Berman emailed Goldstein that she would reimburse LPI for the costs it had incurred in developing the ZIONESS mark, but never did. *See* DX-85. Around that same time, Berman took issue with Goldstein calling herself a "Zioness." Their angry text exchange shows their positions: "Goldstein: I am a zioness you don't own the word. Berman: Actually I do. Berman: Literally. Goldstein: I don't agree w how you have defined it and I know many other people that agree. Goldstein: No. You own a trademark." Trial Tr. at 651:17–654:8; PX-60.

Berman resigned from LPI as of December 2018, and thereafter ran ZMI full-time. Trial Tr. at 113:6–8. Berman maintains that the trademark never belonged to LPI, that there was no transfer of rights nor a license, and that the trademark was solely ZMI's, reflecting her promotion efforts and ZMI's USPTO registration. Goldstein maintains that LPI is the rightful owner, as Berman promoted ZIONESS while she worked at LPI, using LPI's lawyers and public relations consultant, at LPI's expense, and that LPI protested ZMI's use through cease-and-desist letters, and petitioned the Trademark Trial and Appeal Board ("TTAB") to cancel ZMI's registration of the mark. ZMI then filed this lawsuit.

The jury had to decide which entity owned the ZIONESS trademark: ZMI, LPI, or both. I instructed the jury that the central issue was who was the first user of the mark:[1]

---

[1] *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015) ("Rights in a trademark are determined by the date of the mark's first use in commerce."); *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 167 (2d Cir. 2016) (mark is considered "used in commerce when it is employed" to identify goods and services "sold to consumers in a given market").

3

> From this and from the other evidence you've heard and there is sharp contrast between the testimony of Amanda Berman and Brooke Goldstein as to who owns and whose dime on which (sic) this trademark was first used and continued to be used, and that's an issue of credibility that you will have to decide and I'll give you instructions about that as we go along. You will have to find if Berman's activities with Zioness with the trademark were her own or if they were as an employee of Lawfare, through December 31, 2018, when Berman quit her employment. If Berman's activities were done as an employee, Lawfare should be considered the prior user of the mark, and Berman and the company she formed, ZMI, would not have the right to register or use the mark, except with the permission of Lawfare.
>
> If, on the other hand, Berman, alone or with others, created and used the trademark on her own time and independently of her work obligations to Lawfare, she should be considered the prior user, and she, and the company she formed, ZMI, could own, register, and exclusively use the trademark.
>
> As for the period after December 31, 2018, the owner of a trademark can allow another to use it, freely or under conditions, and take back that right at will, unless there is a contract preventing the owner of the trademark from doing so. There was no contract but there was a conflict of testimony between Goldstein and Berman regarding ownership and use. Thus, the paramount issue in this case is who owns the trademark. Lawfare has the burden to prove by a preponderance of evidence that it, not ZMI, is the lawful owner of the trademark.
>
> *See* Trial Tr. at 854:19–:10.

ZMI made four main objections at the charging conference: first, that the instruction should have stated that Lawfare "should be considered *a* prior user" rather than *the* prior user. (See first quoted paragraph above, end of tenth line).

Second, ZMI requested that I strike the text after "user of the mark" towards the middle of the first paragraph of the above excerpt. Trial Tr. at 824:17–825:4. I declined to do so, in the interest of clarity and delineating the parties' respective positions. Trial Tr. at 825:16.

Third, ZMI requested that I add an instruction to the first paragraph of the above excerpt, that "trademark rights are tied to use in a source identifying way in the market pertinent

4

to the bids." ZMI argued that "if a prior user ceases to use the mark in a source identifying way or intends not to use the mark going forward, that prior user loses its rights to the mark." Trial Tr. 825:9–826:1. I declined this request, stating that the whole issue "has to do with Berman's capacity" as an LPI employee, not the extent to which LPI continued to use the mark. Trial Tr. at 825:22–25. ZMI then requested that I add its request at the end of the above excerpt. Again, I declined, stating that it is "not the issue in the case. Abandonment was not a defense at trial. Whatever Berman did until December 31, 2018, is either attributable or not attributable to her job." Trial Tr. 828:13–15.

Fourth, ZMI objected to "freely or other conditions" in the third paragraph of the above excerpt, arguing that there is "no such thing as a naked license of a trademark." Trial Tr. at 827:22–828:3. I declined to alter the charge. Trial Tr. at 828:7–8.

None of the objections would have made a difference. Both parties accepted the propositions of the central issues of the case, whether ZIONESS belongs to LPI because Berman used and registered the trademark as an employee of LPI, using LPI's resources, or whether Berman used and registered the trademark on her own time and incident to her personal efforts and resources. I told the jury that LPI had to overcome the presumption of ownership afforded to ZMI because of the USPTO registration and had the burden prove its ownership by a preponderance of the evidence.

I proposed a verdict sheet at the charging conference for the parties' consideration. I gave the jury three options. It read:

1. Who owns the ZIONESS trademark?

    a) ZMI: _____

    b) LPI: _____

5

c) both: ____

See ECF No. 198. ZMI did not object. Trial Tr. at 838:1–2 ("At this time, we don't have comments to the verdict sheet, your Honor.").

## DISCUSSION

### I. Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b)

ZMI argues it is entitled to judgment as a matter of law, stating that it is the sole owner of ZIONESS, because there was no evidence at trial showing that LPI was a co-owner.

A court may grant judgment as a matter of law against a party if it finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(b). The motion should be granted only if "viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.'" *Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir. 1993) (internal citation omitted).

I instructed the jury on LPI's burden to prove by a preponderance of the evidence that it, not ZMI, owned ZIONESS and was its first user. The jury was given the option to choose co-ownership without objection by either party, and made that choice. The evidence is sufficient to support that verdict. The jury's verdict pre-supposes that LPI satisfied its burden of proof in support of its claim of ownership, but that Berman had also contributed to the use and development of the trademark, both as an employee of LPI and on her own time, pursuant to the provisions of her employment agreement that allowed her to do her own work.

ZMI fails to show that no reasonable juror could have found that both entities owned ZIONESS, and that both LPI and Berman were its first users. As a matter of law, co-ownership is permissible. *See Mikhyln v. Bove*, 08cv3367 (CPS), 2008 WL 4610304, at *3 n.12

6

(E.D.N.Y. Oct. 15, 2008); *Piccari v. GTLO Prods., LLC*, 115 F. Supp. 3d 509 (E.D. Pa. 2015); *Fairway Fox Golf v. Conolty O'Connor NYC LLC*, 111 U.S.P.Q.2d 1302 (T.T.A.B. 2014). The identity of the true owner need not be discernable to the public. *See Authentic Apparel Grp., LLC v. United States*, 989 F.3d 1008, 1017 (Fed. Cir. 2021).

At trial, the evidence showed that LPI expended its resources to create and promote the ZIONESS mark, Goldstein had a leadership role in the design and messaging for the mark, and Berman conceded that prior to September 2017, ZIONESS was an LPI program. Evidence to the contrary – namely, that Berman incorporated ZMI, filed the USPTO application, and exerted control over the ZIONESS brand at ZMI after she left, and that Goldstein did not sit on the board of ZMI – created a question of fact. The issue was properly given to the jury. ZMI's motion for judgment as a matter of law is denied.

## II.    Motion for a New Trial Pursuant to Fed. R. Civ. P. 59(a)

### 1.    Inadequate jury instructions

ZMI asserts that I erred by 1) directing the jury to consider the scope of Amanda Berman's employment as opposed to which entity used the trademark in a source-identifying manner; 2) not instructing that trademark rights are not acquired via naked or oral licenses; 4) improperly instructing the jury on the fair use defense and damages, and; 5) failing to instruct the jury on adverse inferences granted to ZMI in August 2023.

Inadequate jury instructions may constitute grounds for a new trial, provided the errors are "prejudicial in light of the charge as a whole." *Lore v. City of Syracuse*, 670 F.3d 127, 156 (2d Cir. 2012). An erroneous jury instruction "misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Id.* An error in a jury instruction is not prejudicial "when [the court is] persuaded it did not influence the jury's verdict." *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 56 (2d Cir. 2012). "An omission, or an incomplete

7

instruction, is less likely to be prejudicial than a misstatement of the law." *Lore*, 670 F.3d at 156. A new trial is not warranted if the instructions "read as a whole, presented the issues to the jury in a fair and evenhanded manner." *Id.*

First, the jury instructions accurately reflected the key issues of the case. The parties did not dispute 1) that the ZIONESS mark was first used in August 2017, 2) that ZMI – the registrant and putative first user – was not incorporated until February 2018, 3) the contributions by both Goldstein and Berman, 4) Berman's role as both an employee and a lawyer able to pursue her own interests, 5) the use of LPI's resources – its lawyer, its public relations consultant, and its funds – in developing the mark, and 6) Berman's continuing promotion of the mark through ZMI. The instructions accurately explained the issues and allowed the lawyers to present their arguments, fully and with passion.

ZMI argues that it was error for me not to charge that there could not be a naked license of the trademark. But licensing was not the issue of the trial; ownership was the issue, and the jury was informed about that issue.

ZMI argues that it was error to reserve damages instructions until after the jury made a finding of infringement. Splitting a trial to consider liability and damages separately is a discretionary matter. *See Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (2d Cir. 1990) ("leave the mode of trial ultimately to the discretion of the district judge"). Once the jury found that LPI and ZMI were co-owners of the mark, neither entity could infringe the mark as against the other, nor be entitled to infringement damages from the other. *Piccari v. GTLO Prods., LLC*, 115 F. Supp. 3d 509, 514–15 (E.D. Pa. 2015). And, as to ZMI's argument that I did not give an instruction on fair use, a defense raised by LPI and not ZMI, fair use was not an issue of the trial.

8

Fourth, ZMI complains that a discovery abuse of LPI entitled ZMI to an adverse inference not given. I previously had ruled that because LPI's board member Henry Shiner's emails were destroyed, ZMI was entitled to an inference that Shiner would have testified that Berman had permission from LPI to start ZMI as a separate entity and develop ZIONESS. Aug. 2, 2023 Tr. at 12:23–13:1. However, because Shiner testified at trial and was examined and cross-examined without so testifying, an adverse inference charge was inappropriate.

### 2. Evidentiary rulings

ZMI seeks a new trial based on my evidentiary rulings regarding 1) a September 2019 email, 2) the zioness.org domain name, 3) costs LPI incurred in creating the ZIONESS trademark, 4) oral and naked licenses, and 5) lay witness Nancy Kelly.

In general, "an erroneous evidentiary ruling warrants a new trial only when a substantial right of a party is affected, as when a jury's judgment would be swayed in a material fashion by the error." *Restivo v. Hessemann*, 846 F.3d 547, 573 (2d Cir. 2017) (internal quotation marks omitted). A new trial is an extraordinary remedy that "ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 623 (2d Cir. 2001) (internal quotation marks omitted). I have reviewed the transcripts and stand by my rulings in each instance.

First, ZMI argues I erroneously prohibited ZMI from introducing a September 4, 2019 email discussing Google search results for an op-ed Brooke Goldstein wrote, which ZMI argues was probative of the source of the mark as of September 2019. However, ZMI was permitted to cross-examine Goldstein regarding the email, negating any prejudice from its exclusion. *See* Trial Tr. at 716:3–717:18.

9

Second, ZMI argues it should have been permitted to question Berman about her use in August 2017 of "zioness.org" as a domain name as probative of ZMI's exclusive first use. But ZMI had not been incorporated until six months later, in February 2018, and the testimony of a domain name was cumulative of other testimony.

Third, ZMI argues that I improperly admitted testimony and exhibits regarding LPI's payments of expenses relating to the creation of the ZIONESS mark without a limiting instruction that payments are irrelevant to the issue of trademark ownership. The fact that LPI bore the expenses of developing the trademark was relevant to whether Berman or LPI owned the trademark as the first user, and the limiting instruction sought by ZMI was not appropriate.

Fourth, ZMI argues that testimony regarding an oral or naked license of the ZIONESS mark was impermissibly admitted without a limiting instruction about the invalidity of oral licenses in trademark law. In response to a line of questioning by the Court, Goldstein testified that "Amanda, full time employee of ours, full time salary will run [ZMI] while she works for us, and we would retain ownership of the trademark so we could control how it's used. That was exactly the strategy." Trial Tr. at 631:1-5. ZMI did not object then, and it cannot object now. ZMI is incorrect that an oral at-will license cannot be valid. *Dial-A-Mattress Operating Corp. v. Mattress Madness*, 847 F. Supp. 18, 20 n.1 (E.D.N.Y. 2018) ("An agreement conferring a license to use a trademark for an indefinite time may be oral and is terminable at-will by the licensor"); *see Cron v. Hargro Fabrics, Inc.*, 694 N.E.2d 56 (N.Y. 1998) (statute of frauds is not implicated in oral contracts terminable at-will). Again, ownership, not licensing, was the issue of the case, so this ruling could not have resulted in prejudice.

Finally, I properly excluded the testimony of Nancy Kelly, LPI's accountant. ZMI proposed to call her as a lay witness to testify that LPI had not instructed her to treat the

10

ZIONESS mark as an asset. But ZMI had not identified Kelly, or anyone else, as an expert in non-profit accounting and her testimony as to accounting treatment was properly excluded under Fed. R. Evid. 403.

### III. Motion to Amend the Judgment Pursuant to Rule 59(e)

ZMI asks that the judgment be amended pursuant to Fed. R. Civ. P. 59(e) because the verdict is internally inconsistent and not supported by the law. ZMI argues that the jury's finding of co-ownership cannot co-exist with the jury's finding that ZMI did not commit fraud on the USPTO.

Absent "an intervening change of controlling law[ or] the availability of new evidence, a Rule 59(e) motion may properly be granted only if the movant shows the need to correct a clear error or prevent manifest injustice." However, "[i]t is well established that a party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 83 (2d Cir. 2006).

First, ZMI did not object to the verdict before the jury was excused. Second, ZMI makes no showing that a verdict of co-ownership is impermissible as a matter of law, let alone that there has been an intervening change in the law or overlooked factual matters bearing on this inquiry. Finally, the jury's finding that LPI did not prove by clear and convincing evidence that ZMI committed fraud on the USPTO is not inconsistent with co-ownership. ZMI shows no basis to amend the jury's unanimous verdict.

11

## CONCLUSION

For the above reasons, ZMI's motion is denied on all grounds. The Clerk is instructed to terminate ECF No. 232.

SO ORDERED.

Dated:  August 20, 2024
       New York, New York

ALVIN K. HELLERSTEIN
United States District Judge